OPINION OF THE COURT
Ann E. Scherzer, J.
Defendant challenges the constitutionality of Administrative Code of the City of New York § 19-190 (b), a statute enacted on August 22, 2014 as part of Mayor de Blasio’s “Vision Zero” initiative.[1] Specifically, defendant contends that the statute must be stricken because it imposes criminal liability on motorists who cause physical injury to pedestrians by accident, and shifts the burden of proof to the motorist to prove that he was not at fault. The court has reviewed the facts, the moving papers submitted by the People, the defendant and the Corporation Counsel’s office, as well as relevant statutes and case law, and is unpersuaded by defendant’s arguments. Accordingly, the motion to dismiss on constitutional grounds is *612 denied. As detailed below, the court also denies defendant’s motion to dismiss the accusatory instrument as facially insufficient.
Background
The charges in this case stem from an incident that occurred on August 29, 2014 at the intersection of 79th Street and Madison Avenue in Manhattan. On November 26, 2014, defendant was arraigned in Criminal Court on an information charging that he violated Administrative Code § 19-190 (b), “The Right of Way of Pedestrians and Bicyclists—Physical Injury,” and with “Failure of a Driver to Exercise Due Care— Serious Physical Injury,” in violation of Vehicle and Traffic Law § 1146 (c) (1). The information states that defendant drove a yellow taxi into the intersection and turned left without yielding to a pedestrian who was crossing the street in compliance with traffic signals. Defendant is alleged to have struck the pedestrian with his taxi and run over her body, thereby causing her death. The information states that the incident was captured by video surveillance cameras and that defendant acknowledged driving the car that struck the pedestrian. Defendant’s motion to dismiss the information was filed on January 7, 2015.[2]
Motion to Dismiss Based on Constitutionality of Statute
Defendant challenges the constitutionality of Administrative Code § 19-190 (b). More particularly, defendant argues that this new statute violates the Federal and State Constitutions by “undermining] the very concept of ‘innocent until proven guilty,’ the cornerstone of our democratic criminal justice system” and by “purporting] to regulate alleged ‘reckless driving’ by imposing criminal penalties on a ‘strict liability’ basis.” Defendant asserts that liability under this statute does not require “proof of intent nor even proof of negligence, or proof of the commission of any other traffic violations” and improperly *613 “shifts the burden to the motorist who is presumed to have committed a misdemeanor, unless and until the motorist can show lack of fault or [that] he had the right of way, or he can show the pedestrian was at fault.”
Statutory Language
Administrative Code § 19-190 (a) provides that a motorist who fails to yield to a pedestrian or cyclist who has the right-of-way is guilty of a traffic infraction. The offense rises to the level of a misdemeanor if the motor vehicle makes contact with the pedestrian or cyclist and causes physical injury. (Administrative Code § 19-190 [b].) The statute dictates that an accident not caused by the driver’s failure to exercise due care does not violate this statute. (Administrative Code § 19-190 [c].)
Discussion
A statute enacted by the legislature is presumed to be valid and one seeking to invalidate a statute bears the heavy burden of showing its unconstitutionality beyond a reasonable doubt. (Matter of Travis S., 96 NY2d 818, 820 [2001]; People v Foley, 94 NY2d 668, 677 [2000], cert denied 531 US 875 [2000]; People v Tichenor, 89 NY2d 769, 773 [1997]; People v Bright, 71 NY2d 376, 382 [1988].) This heavy burden was met in People v Bright, where the Court of Appeals struck down a statute that criminalized “loitering in a transportation facility.” (William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.35 at 127.) The statute required a suspect to provide a “satisfactory explanation” to the police for his presence at the facility, or face prosecution.[3] (Id.) The Court found this aspect of the statute directly contradicted a citizen’s right not to answer questions posed by law enforcement officers as guaranteed by the Fifth Amendment of the federal and state constitutions and accordingly invalidated the statute. (Id. at 385-386.)
At the same time, the fact that a statute touches upon a constitutional right is not in itself enough to render it unconstitutional. Thus, in People v Tichenor, the Court of Appeals upheld a disorderly conduct statute prohibiting abusive or obscene language uttered with the intent to create, or recklessly creating a risk of public inconvenience, annoyance or *614 alarm. (Tichenor, 89 NY2d 769.) The Court noted that the statute does not criminalize speech based on its content, but rather on the public reaction it may engender. Under those circumstances, the defendant in that case had not met the “initial burden” of demonstrating “the invalidity of the law . . . beyond a reasonable doubt.” (Id. at 773-774.)
Moreover, a constitutional challenge to a statute must fail as long as the statute “provide [s] a person of ordinary intelligence with a reasonable opportunity to know what is prohibited,” and is not “written in a manner that permits or encourages arbitrary or discriminatory enforcement.” (Matter of Travis S., 96 NY2d at 820 [Penal Law charge criminalizing false personation upheld as the statute specifies precisely what conduct is prohibited].)
To successfully challenge Administrative Code § 19-190, defendant would have to demonstrate beyond a reasonable doubt that the statute is unconstitutional by imposing an unacceptable and unjustified restriction on a constitutional right, failing to provide notice of what conduct is prohibited, or by encouraging or permitting arbitrary or discriminatory enforcement. None of defendant’s arguments comes close to meeting that heavy burden.
First, defendant’s complaint that this statute criminalizes conduct on a “strict liability” basis does not amount to a constitutional challenge. Strict liability crimes are clearly contemplated and authorized in New York State, as evidenced by Penal Law § 15.10 which states that the
“minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If such conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, such offense is one of ‘strict liability.’ ”
Administrative Code § 19-190 (b) fits squarely in the definition of a strict liability crime and certainly meets the “minimal requirement” for criminal liability by specifying voluntary acts which an actor is physically capable of performing, namely, the act of driving a motor vehicle without yielding to a pedestrian or bicyclist who has the right-of-way.
Second, defendant is mistaken in asserting that this statute shifts the burden of proof to the defendant, making the motor *615 ist “ ‘guilty until he proves himself innocent.’ ” Contrary to defendant’s contention, Administrative Code § 19-190 (b) does not deem a motorist involved in an accident to be per se guilty of a criminal offense. In fact, to sustain a conviction for this charge the People would have to prove beyond a reasonable doubt that (1) defendant operated a motor vehicle, (2) defendant’s motor vehicle caused contact with a pedestrian or cyclist and that (3) the pedestrian or cyclist had the right-of-way at the time of the impact[4] and (4) suffered physical injury as a result of the collision.
In addition to the elements listed above, the statute provides that physical injury that was not caused by a driver’s failure to exercise due care does not violate the statute.[5] At a minimum, this provides an affirmative defense to a motorist charged with this crime, though a trial court might interpret it as an additional element which the People must prove beyond a reasonable doubt.[6] In short, there is no language or provision in the statute that places a burden on the accused to prove any of the elements of the alleged crime nor is there an express or implied presumption of liability or guilt.
Accordingly, in the absence of any showing that the statute violates the constitutional rights of the defendant, the motion to dismiss must be denied.
Motion to Dismiss for Facial Insufficiency
An information, together with any supporting depositions, must contain nonhearsay allegations providing reasonable cause to believe that the People can prove every element of the crime charged. (See CPL 100.40 [1] [a]-[c]; see also People v Dumas, 68 NY2d 729 [1986]; People v Alejandro, 70 NY2d 133 [1987]; People v McDermott, 69 NY2d 889 [1987]; People v Case, 42 NY2d 98 [1977].) Reasonable cause exists when “evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment *616 and experience that it is reasonably likely that such offense was committed and that such person committed it.” (CPL 70.10 [2].)
The court must assume that the factual allegations are true and must consider all reasonable inferences that may be drawn from the allegations in the light most favorable to the People. (CPL 100.40, 100.15; People v Alejandro, 70 NY2d 133 [1987]; People v Henderson, 92 NY2d 677 [1999]; People v Casey, 95 NY2d 354, 360 [2000].) This does not require that the accusatory instrument state facts that would prove a defendant’s guilt beyond a reasonable doubt but rather that it contain allegations of fact that “give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense.” (Casey at 360.)
After careful review of the accusatory instrument the court finds that it contains nonhearsay allegations sufficient to establish every element of the crime charged and is, therefore, facially sufficient. The information sets forth that the defendant operated a motor vehicle that made contact with a pedestrian who had the right-of-way causing the death of the pedestrian. These facts sufficiently establish a violation of Administrative Code § 19-190 and are detailed enough to prevent multiple prosecutions for the same offense. Furthermore, the court rejects defendant’s argument that these allegations are based on hearsay. The information clearly states that the relevant facts were obtained through the officer’s observations of the video surveillance tapes, the defendant’s admissions and decedent’s certified death certificate. None of those sources of information constitutes hearsay.
Accordingly, defendant’s motion to dismiss the information for facial insufficiency is denied.

. This initiative seeks to “eliminate deadly crashes, especially those involving pedestrians.” (See Mayor de Blasio Launches Interagency Working Group to Implement “Vision Zero,”Prevent Pedestrian Fatalities, available at http://wwwl.nyc.gov/office-of-the-mayor/news/023-14/mayor-de-blasiolaunches-interagency-working-group-implement-vision-zero-preventpedestrian#/0.) Through a set of directives for city agencies such as the New York City Department of Transportation, the New York City Police Department and the Taxi and Limousine Commission, the Mayor’s Office seeks to get across the message “that death and injury on city streets is not acceptable, and that we will no longer regard severe crashes as inevitable.” (New York City Office of the Mayor, Pedestrian Safety Action Plan: Vision Zero Manhattan 2015 at i.)

. On July 22, this court addressed the other matters raised by defendant in his omnibus motion. Specifically, defendant’s motion to preclude statement and identification testimony was denied, the motion to dismiss pursuant to CPL 30.30 was denied and a Huntley hearing was granted. The motion to dismiss on the grounds addressed in this decision was held in abeyance to ensure that notice was served on the offices of the New York State Attorney General and the New York City Corporation Counsel. The Attorney General’s office chose not to take a position on the motion. The Office of Corporation Counsel filed its response on October 20, 2015.

. A person was guilty of this violation if he “loiter[ed] or remain[ed] in any transportation facility, or [was] found sleeping therein, and [was] unable to give a satisfactory explanation of his presence.” (Bright, 71 NY2d at 382, citing former Penal Law § 240.35 [7].)

. A determination of who had the right-of-way would rely upon the regulations set down in Vehicle and Traffic Law article 27.

. A driver’s duty to exercise due care is defined in Vehicle and Traffic Law § 1146.

. The New York City Corporation Counsel’s office interprets subdivision (c) of the statute as an element of the crime. Since the immediate issue before this court is the constitutionality of the statute this decision does not provide a definitive answer on the exact elements of the crime. That issue is to be decided by the trial judge.