OPINION OF THE COURT
Joy Campanelli, J.
By motion dated April 25, 2016 defendant Yehuda Salamon moves pursuant to CPL 170.30 (a) and 170.35 (a) for an order dismissing the complaint as facially insufficient, and dismissing the charge of Administrative Code of the City of New York § 19-190 (b) and declaring said section unconstitutional pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, the New York State Constitution, and in violation of section 15.15 of the Penal Law.[1]
The People submitted opposition papers dated June 2, 2016, and Corporation Counsel filed and served opposition papers on June 14, 2016. The defendant filed his reply affirmation on or about June 27, 2016.
On July 6, 2016, the defendant filed and served a supplemental affirmation wherein he annexed a recent decision[2] from Queens County Criminal Court addressing the issue of the constitutionality of Administrative Code § 19-190. The People and Corporation Counsel were granted the opportunity to submit supplemental opposition papers (filed on Aug. 15, 2016 and Aug. 26, 2016, respectively) addressing the recent decision of the Queens County Criminal Court.
In response to the defendant’s initial motion to dismiss dated June 17, 2015, the People filed and served opposition papers dated August 20, 2015 which annexed a second superseding information, alleging that the defendant violated Vehicle and *962 Traffic Law § 1146 (a), Administrative Code § 19-190 (a), both traffic infractions, and Administrative Code § 19-190 (b), an unclassified misdemeanor, and stating as follows:
“on or about January 05, 2015 at approximately 10:14 p.m. at 12 Avenue and 40th Street, in Kings County, State of New York the defendant: . . .
“Failed to yield to a pedestrian while driving a motor vehicle when the pedestrian had the right of way, struck said pedestrian with the motor vehicle thereby causing physical injury to the pedestrian, and the failure to yield and the physical injury to the pedestrian were caused by defendant’s failure to exercise due care; operated a motor vehicle without exercising due care to avoid colliding with any bicyclist, pedestrian or domestic animal upon a roadway. . . .
“Deponent (Police Officer Listian Rustem) states that shortly after the above time, deponent arrived at the above location and observed an elderly woman standing on the sidewalk being evacuated by paramedics.
“Deponent further states that shortly after the above time, and at the above location, deponent observed an elderly man in close proximity to the elderly woman, observed that the elderly man was strapped to a stretcher and was being placed into an ambulance by paramedics, and observed that the elderly man was unconscious in that the elderly man’s eyes were closed and the elderly man was not moving. . . .
“Deponent is further informed by defendant’s own statements to deponent that, in sum and substance, at the above time and location the defendant had the green light and was making a left turn from 12th Avenue onto 40th Street when he struck the above-mentioned elderly man and elderly woman crossing the street as the defendant made the left turn onto 40th Street.
“Deponent further states that shortly after the above time, and at the above location he observed that the traffic lights and pedestrian traffic devices at the intersection to be working properly. . . .
“(that) when the traffic light turned green for vehicular traffic traveling north or south on 12th Avenue, the pedestrian traffic light displayed a walk signal to pedestrians crossing 40th Street *963 while walking north or south on 12th Avenue. . . . “that Deponent viewed video surveillance of the above location, and deponent observed the above mentioned sport utility vehicle make a left turn at a green light, while, at the same time, two pedestrians were crossing the street on a marked pedestrian crosswalk with the walk signal in their favor, and that the sport utility vehicle struck both pedestrians.”
Administrative Code § 19-190 reads in pertinent part as follows:
“a. Except as provided in subdivision b of this section, any driver of a motor vehicle who fails to yield to a pedestrian or person riding a bicycle when such pedestrian or person has the right of way shall be guilty of a traffic infraction, which shall be punishable by a fine of not more than fifty dollars or imprisonment of not more than fifteen days or both such fine and imprisonment. In addition to or as an alternative to such penalty, such driver shall be subject to a civil penalty of not more than one hundred dollars which may be recovered in a proceeding before the environmental control board. For purposes of this section, ‘motor vehicle’ shall have the same meaning as in section one hundred twenty-five of the vehicle and traffic law.
“b. Except as provided in subdivision c of this section, any driver of a motor vehicle who violates subdivision a of this section and whose motor vehicle causes contact with a pedestrian or person riding a bicycle and thereby causes physical injury, shall be guilty of a misdemeanor, which shall be punishable by a fine of not more than two hundred fifty dollars, or imprisonment for not more than thirty days or both such fine and imprisonment. In addition to or as an alternative to such penalty, such driver shall be subject to a civil penalty of not more than two hundred fifty dollars which may be recovered in a proceeding before the environmental control board. For purposes of this section, ‘physical injury’ shall have the same meaning as in section 10.00 of the penal law.
“c. It shall not be a violation of this section if the failure to yield and/or physical injury was not caused by the driver’s failure to exercise due care.”
*964 Defendant argues that the statute (Administrative Code § 19-190 [b]) is vague as to the conduct prohibited and as to the proper defense and standard of proof that the defendant may interpose. Furthermore, the statute fails to identify (or spell out) a necessary mens rea required for criminal liability. Because Administrative Code § 19-190 (b) does not impose strict liability in accordance with Penal Law § 15.15, it should be defined as a crime of mental culpability, and requires identification with one of the enumerated mens rea elements— acts which are intentionally, knowingly, recklessly or criminally negligent. Administrative Code § 19-190 (b) also fails to give a person of ordinary intelligence a specific criminal element or conduct that is prohibited. Defendant’s counsel argues that subdivision (c) of Administrative Code § 19-190 is unclear and vague as to whether it is an affirmative defense which must be proved by the defendant by a preponderance of the evidence or it is an ordinary defense to be disproved beyond a reasonable doubt by the People. Furthermore, the statute does not include a statement of mens rea as required by Penal Law §§ 15.05, 15.10 and 15.15. As such, the “due care” negligence standard in Administrative Code § 19-190 (b) and (c) does not constitute the requisite mens rea.
In opposition, the People argue that Administrative Code § 19-190 (b) sufficiently informs the defendant of the prohibited conduct in that the driver of the vehicle is prohibited from hitting and causing injury to a pedestrian or bicyclist with a right-of-way. The criminality or mens rea is the lack of due care which gives a person of ordinary intelligence and law enforcement adequate notice of conduct that is forbidden, citing People v Stuart (100 NY2d 412 [2003]).
The People further argue that Penal Law § 15.05 is strictly limited to the Penal Law and does not apply to an offense enacted by the New York State Legislature such as the Vehicle and Traffic Law, nor to Administrative Code § 19-190 which was enacted by the NY City Council. The court discounts this argument because it plainly stands for the unsubstantiated and dubious proposition that a legislative body enacting a criminal law could avoid the mandated definitions of culpable mental states under Penal Law article 15 by enacting a criminal law outside the Penal Law and inside other municipal and state laws which deal with specific crimes. See, for example, various NY City and state laws (such as Agriculture and Markets Law, Alcoholic Beverage Control Law, Vehicle and *965 Traffic Law, Administrative Code, etc.) dealing with numerous criminal acts, all of which would not be subject to culpable mental states under this line of reasoning.
When a defendant challenges the constitutionality of a statute as vague, the court must undertake a two part test. Firstly, the court must determine whether the statute “is sufficiently definite to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute” (Stuart at 420 [emphasis added], citing People v Nelson, 69 NY2d 302, 307 [1987]). Secondly, the court must determine whether the enactment provides officials with clear standards of enforcement (Stuart at 420).
These two prongs are closely linked. If a statute does not give an offender adequate notice of what is prohibited, then law enforcement will be similarly disadvantaged and cannot be guided by the language of the statute, which could then lead to arbitrary enforcement.
Defendant may challenge the constitutionality of a statute either facially under all circumstances or as applied only to the defendant. An “as applied” challenge requires the court to consider whether a statute can be constitutionally applied to the defendant under the facts of his case within the parameters of relevant sections of the federal and/or state constitutions.
A facial challenge requires the court to examine the words of the statute without reference to the defendant’s conduct (Stuart). Legislative enactments, including local municipal ordinances (Matter of Turner v Municipal Code Violations Bur. of City of Rochester, 122 AD3d 1376 [4th Dept 2014]), carry a strong presumption of constitutionality. In a facial constitutional challenge, the defendant bears a heavy burden that the statute is impermissibly vague and “suffers from wholesale constitutional impairment” beyond a reasonable doubt in all of its applications (People v Davis, 13 NY3d 17, 23 [2009]). While the burden of meeting the challenge is high, facial constitutional challenges are permissible in the presence of a constitutionally protected right (Dickerson v Napolitano, 604 F3d 732, 744 [2d Cir 2010], citing Chicago v Morales, 527 US 41, 53 [1999]; see also Sanson at 984). Such a finding would mean that the law is invalid in its entirety.
In the current matter, the defendant does not specify whether the challenge is facial or as applied to this defendant. A review of defendant’s motion suggests that the challenge against the statute is facial and under all circumstances. The arguments *966 put forth by the defendant challenge the statute in its entirety and not just to this particular defendant.
As such, the defendant must demonstrate beyond a reasonable doubt that this statute (provisions) is facially unconstitutional, and is incapable of any valid application. The court is required to only look at the words on the page with no reference to the defendant’s conduct.
A reading of Administrative Code § 19-190 provides the defendant, at least at first blush, with a finite conduct that is prohibited and with sufficient guidance for enforcement by the police; to wit, a driver of a motor vehicle that makes contact with a pedestrian or a person riding a bicycle who has the right-of-way and causes injury to that person shall be guilty of a misdemeanor, if the driver failed to use due care.
The language of due care is also found in Vehicle and Traffic Law § 1146, which reads as follows:
“(a) Notwithstanding the provisions of any other law to the contrary, every driver of a vehicle shall exercise due care to avoid colliding with any bicyclist, pedestrian, or domestic animal upon any roadway and shall give warning by sounding the horn when necessary . . .
“(b) 1. A driver of a motor vehicle who causes physical injury as defined in article ten of the penal law to a pedestrian or a bicyclist while failing to exercise due care in violation of subdivision (a) of this section, shall be guilty of a traffic infraction
“(c) . . . 2. If such driver of a motor vehicle causes serious physical injury while failing to exercise due care in violation of subdivision (a) of this section, then there shall be a rebuttable presumption that, as a result of such failure to exercise due care, such person operated the motor vehicle in a manner that caused such serious physical injury.
“(d) A violation of subdivision (b) or (c) of this section committed by a person who has previously been convicted of any violation of such subdivisions within the preceding five years, shall constitute a class B misdemeanor . . . .”
Vehicle and Traffic Law § 1146, like Administrative Code § 19-190, uses a due care standard, but unlike Administrative Code § 19-190, the driver’s failure to exercise due care initially *967 results in a traffic infraction which is punishable by a fine and/or 15 days’ imprisonment. Thereafter, pursuant to subdivision (d) of Vehicle and Traffic Law § 1146, a violation of subdivision (b) or (c) within the preceding five years results in a B misdemeanor and is punishable by a larger fine and 90 days’ incarceration. Most noteworthy is the fact that a second violation within five years of the negligence standard contained in this statute results in a change of punishment from a traffic infraction to a B misdemeanor crime.
The language and acts prohibited in Vehicle and Traffic Law § 1146 are very similar to those stated in Administrative Code § 19-190 (b), as is the purported mens rea of due care (which has been previously defined as that degree of care that a reasonable person would exercise in like circumstances and is defined and discussed in greater detail below).
In his papers and at oral argument, defendant’s counsel strongly argued that the criminalization of negligence (lack of due care) is a slippery slope that does not provide the required mens rea for criminality. The People and Corporation Counsel argue that negligence is for all intents and purposes a form of mens rea simply not addressed in Penal Law article 15.
In attempting to reconcile the mens rea element of a crime with strict liability and due care issues, this court is first obligated to review article 15 of the Penal Law, dealing with culpability. Conduct is defined as an act or omission and its accompanying mental state (Penal Law § 15.00 [4]). A voluntary act is expressed as “a bodily movement performed consciously as a result of effort or determination” (Penal Law § 15.00 [2]), while omission “means a failure to perform an act as to which a duty of performance is imposed by law” (Penal Law § 15.00 [3]).
Culpable mental state means “ ‘intentionally’ or ‘knowingly’ or ‘recklessly’ ” or with “criminal negligence,” as defined in Penal Law § 15.00 (6).[3] However, the courts have long recognized that recklessness is a higher or more culpable form of negligence and “a long distance separates the negligence which renders one criminally liable from that which establishes civil liability” (People v Montanez, 41 NY2d 53, 56 [1976] [internal quotation marks omitted]), also noting that negligence which caused the death of a person must be proved by conduct showing the defendant’s substantial and unjustifiable acts which *968 constituted a gross deviation from a reasonable person’s conduct under the situation. See also People v Boutin (75 NY2d 692 [1990]) where “the carelessness required for criminal negligence is appreciably more than that for ordinary civil negligence, and that the carelessness must be such that its seriousness would be apparent to anyone who shares the community’s general sense of right and wrong” (Boutin at 695-696); his failure to engage in some blameworthy conduct which created or contributed to a substantial risk of injury and his nonperception of a risk, even if death results, is not enough to establish criminal negligence (Boutin at 696). Likewise, the “reckless disregard” standard requires “more than a showing of a lack of due care under the circumstances—the showing typically associated with ordinary negligence” (Frezzell v City of New York, 24 NY3d 213, 217 [2014] [internal quotation marks omitted]). Reckless disregard involves an act of unreasonable character done with conscious indifference to the harmful results in disregard to a known or obvious risk great enough to make it highly likely that the harm would follow (Frezzell at 217).
If the conduct or the omission does not require a culpable mental state, it is a “strict liability” crime (Penal Law § 15.10; see e.g. People v Ryan, 82 NY2d 497, 502 [1993]; People v Campbell, 72 NY2d 602 [1988]). Even though a statute may not set forth a culpable mental state required for the commission of the crime, “a culpable mental state may nevertheless be required for the commission of such offense ... if the proscribed conduct necessarily involves such culpable mental state” (Penal Law § 15.15 [2]). Furthermore, “[a] statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability” (Penal Law § 15.15 [2]).
In a recent decision in the First Department, the court found that Administrative Code § 19-190 (b) “fits squarely” within the purview of strict liability crimes because the statute specifies the voluntary act which the defendant is physically capable of performing, namely failing to yield the right-of-way and striking and causing serious injury to the pedestrian (People v Hossain, 50 Misc 3d 610, 614 [Crim Ct, NY County 2015]). The court then reasoned that the statute dictates that an accident not caused by the driver’s failure to exercise due care does not violate the statute (Administrative Code § 19-190 [c]). However, in both written and oral argument before this court, the People *969 have conceded that the statute is not a “strict liability” statute, and turns on a culpable mental state of lack of due care.
Furthermore, a careful analysis of case law, the relevant statutes and the legislative intent raises serious issues as to the criminality of “lack of due care” statute. The Court of Appeals has noted this country’s two century history
“as a rule of statutory construction, indefiniteness is a ground for nullification of penal laws ... It should be a principle of every criminal code, and certainly belongs to ours, that no person be adjudged guilty of an offence unless it be created and promulgated in terms which leave no reasonable doubt of their meaning” (People v Stuart at 418-419, referencing The Enterprise, 1 Paine 32 [1810]).[4]
The Court in Stuart then endorsed a two prong test which firstly requires the statute to be sufficiently definite so as to give a person of ordinary intelligence fair notice that contemplated conduct is forbidden by statute, and secondly requires the statute to provide clear standards of enforcement—in this case the standard of “due care.”
The People argue that the lack of due care is culpable conduct and is a form of mens rea. In other words, if the prohibited conduct is hitting a pedestrian, the statute sounds in strict liability. However, the People have conceded that Administrative Code § 19-190 is not a strict liability statute. In settling a federal action commenced by the Transport Workers Union (bus drivers in New York) challenging the constitutionality of Administrative Code § 19-190 shortly after it was enacted, the People acknowledged that “due care”[5] has the same meaning as defined in case law and common usage. The parties, and specifically the People, agreed that “due care” portends reasonableness under each circumstance as exercised by a reasonably prudent driver.[6]
*970 It would well serve to further define “due care.” Due care has been defined as “that care which is exercised by reasonably prudent drivers. It is not that degree of care which guarantees that a driver will avoid any accident no matter what the circumstances might be” (Matter of Russell v Adduci, 140 AD2d 844, 845-846 [3d Dept 1988]). Due care has also been defined as:
“Just, proper, and sufficient care, so far as the circumstances demand it; the absence of negligence. This term, as usually understood in cases where the gist of the action is the defendant’s negligence, implies not only that a party has not been negligent or careless, but that he has been guilty of no violation of law in relation to the subject-matter or transaction which constitutes the cause of action . . . .” (See The Law Dictionary: Black’s Law Dictionary Free Online Legal Dictionary [2d ed], due care, http://thelawdictionary.org/due-care/.)
Similarly, in defining “due care,” Black’s Law Dictionary references “due care” to “reasonable care” which it defines:
“As a test of liability for negligence, the degree of care that a prudent and competent person engaged in the same line of business or endeavor would exercise under similar circumstances. Generally, reasonable care is the application of whatever intelligence and attention one possesses for the satisfaction of one’s needs. The term is always relative, depending on the particular circumstances. What is reasonable for an infant in one case (for example, involving an adult) might be gross negligence in another (for example, involving an infant)” (Black’s Law Dictionary [10th ed 2014], reasonable care).
The People argue that due care has previously been defined several times in criminal cases. No cases have been presented for a criminal definition of lack of due care. Instead, the few cases cited by the People are strained efforts to bring civil negligence within the purview of criminality. The People argue *971 that criminal negligence is a codification of a common-law standard that drivers should drive in a non-negligent manner. The People may have taken a leap by declaring lack of due care (negligence) is culpable criminal conduct because negligence, in of itself, has the mens rea (criminal mind) element.
In support of this proposition the People cite Vehicle and Traffic Law § 1146. The People conclude that the state legislature has declared that negligent acts can be misdemeanors. However, the lack of due care in striking a pedestrian or bicyclist who has the right-of-way within Vehicle and Traffic Law § 1146 (a) is a traffic infraction and not a crime. Only after an individual is involved in two such incidents within a five year period can one be charged with a misdemeanor. Firstly, the court notes that the constitutionality of Vehicle and Traffic Law § 1146 (c) has not been sufficiently addressed by the courts. Secondly, a logical reading and conclusion of Vehicle and Traffic Law § 1146 is that lack of due care is not initially a crime, but once the defendant has been involved in a second and similar incident, he should be more cognitive of the dangerous repercussions of his seemingly negligent acts.
The People attempt to buttress the legitimacy of Administrative Code § 19-190 through two separate arguments. The first argument is that it is a strict liability statute in the sense that it simply states it is a crime when a driver fails to yield to, strikes and seriously injures a pedestrian who has a right-of-way, even though they represent that there is no violation of this law if the contact with the pedestrian/bicyclist was not caused by the driver’s failure to exercise due care. The People argue that the statute does not want for vagueness. Yet, under these circumstances, the court is obligated to reconcile the prohibition for striking which sounds in strict liability (a criminal act) and injuring a pedestrian who has that right-of-way with an analysis of the driver’s culpable mental state because the statute then states that “[i]t shall not be violation of this section if the failure to yield and/or physical injury was not caused by the driver’s failure to exercise due care” (Administrative Code § 19-190 [c]), a historically civil standard. The second argument as presented to this court contends that the negligent standard of due care is yet another form of mens rea.
Both arguments blur the historic boundary between civil tort liability and criminality. Notwithstanding the People’s argument that failure to exercise due care is yet another form of *972 mens rea, the People in essence seek to replace the historic criminal “cognitive” mens rea requirement with a tort law conduct-based standard. (See Noah M. Kazis, Comment, Tort Concepts in Traffic Crimes, 125 Yale LJ 1131, 1136-1137 [Feb. 2016]; see also Kenneth W. Simons, The Crime/Tort Distinction: Legal Doctrine and Normative Perspectives, 17 Widener LJ 719 [2008].) Likewise, at issue is the question whether this criminal statute requiring a criminal “beyond a reasonable doubt” standard has co-opted civil negligence standards of lesser weight by conceding a due care standard. And as previously stated, the confusion is further compounded by the City of New York’s own concessions and explanations. Such interpretation, rejected by this court, also raised unaddressed issues here as the burden of proof and standard of proof relating to due care in an otherwise strict liability interpretation of the statute. (See e.g. People v Christmann, 3 Misc 3d 309 [Newark Just Ct 2004] [where the evidence of the driver’s violation of Vehicle and Traffic Law § 1146—lack of due care—had to be proved beyond a reasonable doubt].)[7]
Thus, this court is now faced with the fundamental challenge of determining if negligence may be categorized as a crime. There are a plethora of law review articles spanning some 10 decades in which scholars have wrestled with mens rea, reasonable person standards, criminalizing negligence,[8] and the relationship of negligence to some form of culpable and criminal mental state.[9] One school has argued “that negligence is a state of mind; a fact obscured by the circumstances that *973 stated external standards are applied to the proof of it”[10] (Henry W. Edgerton, Negligence, Inadvertence and Indifference; The Relation of Mental States to Negligence, 39 Harvard L Rev 849, 849 [1926], citing Melville Madison Bigelow, Torts at 19 [8th ed]). As so defined, negligence should be “treated as a form of mens rea, standing side by side with wrongful intention as a formal ground of responsibility” (Edgerton at 850).
The second view generally regarded as more orthodox starting in the early twentieth century, succinctly summarized: “[n]egligence is conduct, not a state of mind.” (Edgerton at 849, citing Henry T. Terry, Negligence, 29 Harvard L Rev 40, 40 [Nov. 1915].) A half century later, Professor Jerome Hall challenged the American Law Institute’s adoption of the then Model Penal Code’s standard that a person is culpable if he acts purposely, knowingly, recklessly or negligently (Jerome Hall, Negligent Behavior Should he Excluded from Penal Liability, 63 Colum L Rev 632 [Apr. 1963]; cf. Penal Law art 15 [which discusses and adopts the first three standards but omits reference to plain negligence]). In arguing for the exclusion of negligence from penal liability, Professor Hall points out that the Model Penal Code complicates and confuses its proposed statute by including negligence as involving a “gross deviation from the standard of care that a reasonable person would observe” (Hall at 633, citing Model Penal Code § 2.02 [2]). However, Professor Hall narrowly interprets negligent behavior in stating that at the time immediately before the dangerous behavior, the party does not have knowledge, belief or suspicion that his behavior is perilous.
In the face of the restrictions and guidelines imposed on this lower court, it is nevertheless cognizant of the dynamic conflicts surrounding the constitutionality of Administrative Code § 19-190. To begin with, intentionality in some form such as purposely, knowingly, or recklessly is required for criminality (Mark Yagerman & Max Bookman, Criminalizing Negligence in the New York City Administrative Code, 44 Torts, Ins & Compensation L Sec J [No.1] 21 [NY St Bar Assn, summer 2015], citing e.g. Model Penal Code § 2.02, General Requir *974 ements of Culpability). “Moreover, proof of criminal conduct must be beyond a reasonable doubt, as opposed to the civil preponderance of the evidence standard” (id. at 21).
Likewise, the legislature and the appellate courts have not addressed the civil standard of due care in the context of a crime. As defined above, due care does not encompass any currently recognizable or general form of mens rea. Indeed, within the scholarly legal community questions still persist with how to define negligence with schools of thought divided among subjective negligence advocates, objective thought advocates, or hybrid defined advocates (see brief reference to law review references above). Thus, “a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application, violates the first essential of due process law” (Connally v General Constr. Co., 269 US 385 [1926]; see also Stuart at 418-419 [“indefiniteness is a ground for nullification of penal laws”]). Vagueness in the language of criminal statutes offers no guidance to the judiciary, the People and to law enforcement, and can lead to arbitrary application of the law. (See People v New York Trap Rock Corp., 57 NY2d 371 [1982]; People v Bright, 71 NY2d 376 [1988]; People v Stuart.)
The familiar civil liability feature of due care standard of a reasonable person is inconsistent “with the conventional requirement for criminal conduct—awareness[11] of some wrongdoing” (Elonis v United States, 575 US —, —, 135 S Ct 2001, 2011 [2015] [internal quotation marks and emphasis omitted], citing Staples v United States, 511 US 600, 606-607 [1994]). In reversing a defendant’s conviction for posting threatening communications on the Internet on the grounds that the jury was incorrectly instructed to use a civil tort liability negligence standard instead of a culpable mens rea standard, the Supreme Court stated:
“Elonis’s conviction, however, was premised solely on how his posts would be understood by a reasonable person. Such a ‘reasonable person’ standard is *975 a familiar feature of civil liability in tort law, but is inconsistent with ‘the conventional requirement for criminal conduct—awareness of some wrongdoing.’ Having liability turn on whether a ‘reasonable person’ regards the communication as a threat— regardless of what the defendant thinks—‘reduces culpability on the all-important element of the crime to negligence,’ and we ‘have long been reluctant to infer that a negligence standard was intended in criminal statutes’ ” (Elonis, 575 US at —, 135 S Ct at 2011 [citations omitted]).
Lastly, the court notes the judiciary’s tradition of “defenders of the line between civil and criminal law” (Kazis at 1145, citing Morissette v United States, 342 US 246 [1952]) as the Supreme Court’s philosophy on criminal law as a limiting factor on the legislature’s ability to do away with intent requirements. In Morissette, above, the Supreme Court reversed the defendant’s conviction for converting government personal property (spent artillery shells) into personal use as scrap metal on the grounds that defendant, believing that the scrap was abandoned, had no criminal intent. In reviewing the history of criminal intent, the Court traced “[c]rime, as a compound concept, generally constituted only from the concurrence of an evil-meaning mind with an evil-doing hand” (Morissette at 251) to the nineteenth century common law, early American settlers and eighteenth century England.[12] Thus, except for specifically identified strict liability crimes, a defendant must be blameworthy in mind before he can be found guilty, a concept courts have expressed over time through various terms such as mens rea, scienter, malice, aforethought, guilty knowledge, and the like (see Morissette at 252 [1952]).
New York City automobile death rates exceed 100 people each year over the past several years.[13] The court recognizes and commends New York City’s efforts to curb the amount of serious injuries and deaths, but the court cannot add these *976 facts to its equation[14] in determining the constitutionality of law which changes the very face of criminal law by adding a new degree to criminality.
Having touched upon the myriad of issues surrounding the introduction of common-law negligence (due care) standards for a criminal act outside the currently accepted strict liability exception, the court must find that the use of civil tort liability standard of negligence instead of the higher criminal standard of mens rea in the prosecution of a criminal case violates the defendant’s Fifth and Fourteenth Amendment rights and protection under the state constitution (People v Sanson). Both the introduction of criminal guideline elements into civil negligence liability standards and the resulting vagueness violate the defendant’s rights of due process.
Accordingly, this court finds Administrative Code § 19-190 (b) to be unconstitutional on its face.
That portion of the defendant’s motion to dismiss Administrative Code § 19-190 (b) for facial insufficiency is granted in light of the court’s finding that Administrative Code § 19-190 (b) is unconstitutional. This court finds that the charges under Vehicle and Traffic Law § 1146 (a) and Administrative Code § 19-190 (a), both traffic infractions and therefore not crimes, as presented in the second superseding information are facially sufficient. As the defendant has not challenged the constitutionality of Vehicle and Traffic Law § 1146 (a)[15] or Administrative Code § 19-190 (a), the court does not rule on that issue.
By separate motion dated February 18, 2016 defendant Sala-mon had moved this court for an order precluding the District Attorney from introducing the defendant’s statements pursuant to CPL 710.30 (1) (a). The People responded by letter dated March 16, 2016, which does not conform to CPLR and CPL motion practice. Defendant did file and serve a reply affirmation. Upon review, and even though the People’s papers were not in proper form, the defendant’s motion is denied, and proper ap *977 plication for suppression hearings is reserved for the trial judge at the time of trial.
Accordingly, defendant’s motion to dismiss is granted to the extent that Administrative Code § 19-190 (b) is dismissed. The charges under Vehicle and Traffic Law § 1146 (a) and Administrative Code § 19-190 (a) remain in full force and effect.

. The defendant also seeks to “renew and reargue” his previously filed motions which had been dismissed for failure to serve Corporation Counsel, but presents no arguments for that relief.
Defendant’s motion also references and annexes his pleadings relating to the original motion of June 17, 2015, and the People’s opposition papers of August 20, 2015, surreply of September 18, 2015 and the People’s supplemental opposition dated December 14, 2015 which the court allowed after oral argument on the record on October 21, 2015.

. People v Sanson, 52 Misc 3d 980 (Crim Ct, Queens County 2016).

. An additional culpable mental state is “depraved indifference to human life.” (People v Feingold, 7 NY3d 288 [2006].)

. The language in these cited cases and the cited law review articles raises issues in both allowing a civil negligence standard to be criminally defined and the inherent vagueness in even attempting to define the negligence in criminal terms.

. The prohibited conduct in the statute is “lack of due care.”

. “The failure of a driver of a motor vehicle to yield to a pedestrian or bicyclist when such pedestrian or bicyclist has the right of way shall not give rise to strict liability under either Administrative Code Section 19-190(a) or Administrative Code Section 19-190(b) because the ‘failure to exercise due care’ language contained in Section 19-190(c) of the Administrative Code is a *970 required element of both Section 19-190(a) of the Administrative Code and Section 19-190(b) of the Administrative Code.” (Transport Workers Union of Greater N.Y. v De Blasio, US Dist Ct, ED NY, 15 CV 2225 [BMC], Aug. 28, 2015 [stipulated order of settlement, withdrawal and discontinuance, settling a class action commenced by TWU, AFL-CIO on behalf of various NY City bus drivers seeking to declare the statute, inter alia, in violation of 42 USC § 1983 (Due Process Clause and void for vagueness)].)

. More particularly, in evaluating aspects of Administrative Code § 19-190, in People v Hossain (50 Misc 3d 610 [Crim Ct, NY County 2015]) the court held that violation of this law was a strict liability crime. In People v Gallagher (50 Misc 3d 317 [Crim Ct, Bronx County 2015]) the court held that the statute was not unconstitutionally vague in that “ ‘due care’ is sufficiently clear in meaning to provide notice of what is prohibited and gives clear guidance for enforcement” (Gallagher at 331).

. See more recently, for example, Mayo Moran, The Reasonable Person: A Conceptual Biography in Comparative Perspective (14 Lewis & Clark L Rev 1233 [winter 2010]); Eric A. Johnson, Rethinking the Presumption of Mens Rea (47 Wake Forest L Rev 769 [fall 2012]); Assaf Hamdani, Mens Rea and the Cost of Ignorance (93 Va L Rev 415 [Apr. 2007]); and Leslie Yalof Garfield, A More Principled Approach to Criminalizing Negligence: A Prescription for the Legislature (65 Tenn L Rev 875 [summer 1998]).

. Professor Kazis, while not addressing his personal views as to the criminality of the Right-of-Way Law, does point out the long history of the relationship of negligence to some form of criminal mens rea and indicates that “[w]ith notable exceptions, most legal scholars agree that the law should *973 ‘resist the temptation to mix and match doctrines and functions at will’ ” (Kazis at 1134, citing Simons at 730).

. In accord, “negligence . . . essentially consists in the mental attitude of undue indifference with respect to one’s conduct and its consequences” (Henry W. Edgerton, Negligence, Inadvertence and Indifference, The Relation of Mental States to Negligence, 39 Harvard L Rev 849, 850 [May 1926] [emphasis omitted], citing John Salmond, Torts at 22 [6th ed 1924]).

. In the same vein, in noting the issue of awareness and strict liability, the court is cognizant of recent federal proposed legislation severely curtailing strict liability crimes, currently being reviewed in the U.S. Senate Judiciary Committee. (See also Hearing Tr, Committee of Judiciary House of Representatives, Mens Rea: The Need for a Meaningful Intent Requirement in Federal Criminal Law [July 19, 2013].)

. The Court cites “Blackstone’s sweeping statement that to constitute any crime there must first be a ‘vicious will’ ” (Morissette at 251, citing 4 William Blackstone, Commentaries on the Laws of England at 21 [John L. Wendell ed 1847]).

. Emma G. Fitzsimmons, Number of Traffic Deaths in New York Falls for Second Straight Year, NY Times, Jan. 1, 2016 (pedestrian deaths fall to 133); Mayor Bill de Blasio Announces 2015 was Officially the Safest Year Ever on New York City Streets, Jan. 19, 2016, http://wwwl.nyc.gov/office-of-the-mayor/news/069-16/mayor-bill-de-blasio-2015-was-officially-safest-year-ever-new-york-city-streets#/0.

. Likewise, warnings of dire economic consequences to drivers and victims of accidents as a result of insurance companies’ wholesale disclaimer and refusal to insure the harsh results of serious accidents must be ignored. (See e.g. Yagerman & Bookman, Criminalizing Negligence in the New York City Administrative Code.)

. Had the defendant, whose motion had previously been dismissed without prejudice and adjourned for failure to serve interested parties, properly raised the issue of constitutionality of this state statute, the defendant would have been obligated to serve the Attorney General of the New York.